**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHARLENE A. JURY, | : | CIVIL ACTION NO. 3:12-CV-2002 |
| | : | |
| Plaintiff, | : | (Chief Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| CAROLYN W. COLVIN, ACTING | : | |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY ADMINISTRATION,[1] | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM

The above-captioned action seeks review of the Commissioner of Social

Security's ("Commissioner") decision denying plaintiff Sharlene A. Jury's ("Jury")

claim for disability insurance benefits.  Presently before the court is Jury's appeal

from an administrative law judge's ("ALJ") decision upholding the denial of social

security benefits.  (Doc. 1).  For the reasons that follow, the court will remand the

above-captioned matter to the ALJ for further proceedings.

---

[1] Michael J. Astrue was the Commissioner of Social Security when the instant action was filed against him in his official capacity.  Astrue subsequently vacated his position, and Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  See Official Social Security Website, http:// www.socialsecurity.gov/pressoffice/factsheets/colvin.htm (last accessed March 12, 2014).  Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this action.  FED. R. CIV. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

## I.     Factual Background and Procedural History

Plaintiff Sharlene A. Jury was born on July 1, 1962, and she was 47 years old on the alleged disability onset date.[2]   (Doc. 8-2 at 20).[3]   She is married and lives with her husband.  (Id. at 31).  She has a high school education as well as vocational training in food management services.  (Id. at 20, 31).

On April 12, 2010, Jury protectively[4] filed an initial application for disability insurance benefits[5] due to disability since February 1, 2010.  (Id. at 12).  The Commissioner denied her initial application on June 23, 2010.  (Id.)  Jury subsequently filed a written request for a hearing.  (Id.)  On July 6, 2011, Jury

---

[2] At all times relevant to this matter, Jury was considered a "younger individual," whose age would not seriously impact her ability to adjust to other work.  (Doc. 8-2 at 20); see 20 C.F.R. § 404.1563(c); see also 20 C.F.R., pt. 404, subpt. P, app. 2, § 201(h)(1) ("The term younger individual is used to denote an individual 18 through 49.").

[3] Citations to the administrative record (Doc. 8) reflect the docket number followed by the specific Bates-stamped page number on the bottom right-hand corner of each page of the record.

[4] A protective filing occurs when an individual initially contacts the Social Security Administration to file a claim for benefits and requests an expedited filing date.  Simply stated, it allows an individual to have an application date based upon the date of his or her first contact with the Administration.

[5] Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes.  See 42 U.S.C. §§ 415(a), 416(i)(1).  The last date that an individual meets the requirements of being insured is commonly referred to as the "date last insured."  See id. § 416(i)(2).  The ALJ determined that Jury met the insured status requirements through December 31, 2013.  (Doc. 8-2 at 12, 14).  In order to establish entitlement to disability insurance benefits, Jury is required to establish that she suffered from a disability on or before December 31, 2013.  20 C.F.R. §404.131; see also Matullo v. Bowen, 926 F.2d 240, 244 (3d Cir. 1990).

2

appeared and testified before an ALJ at a hearing held in Harrisburg, Pennsylvania. (Id.)

Jury alleges disability based upon asthma, vision problems, and major depression. (Id. at 18). At the hearing, Jury testified that her asthma symptoms include shortness of breath, tightness in her chest, and tiredness, and that these symptoms are exacerbated by chemicals, heat, and other fumes. (Id. at 32). Jury largely treats her asthma symptoms with the use of inhalers. (Id. at 32-33). Jury also reported that she has been dealing with depression since her multiple surgeries and treatment for breast cancer. (Id. at 33). Jury did not seek counseling and controls her symptoms only with a prescription for an anti-depressant from her primary care physicians. (Id. at 19, 33-34). Jury indicated that her depression symptoms do not impact her ability to perform routine activities. (Id. at 34).

With respect to her vision, Jury testified that she relies on her left eye and cannot see clearly through her right eye. (Id. at 35, 38). Despite the use of bifocal glasses, she cannot read small print. (Id. at 34). Jury also has difficulty focusing on objects beyond an arm's distance, distinguishing small objects, and seeing when exposed to bright light. (Id. at 18). Jury reported that her vision worsens after about fifteen to thirty minutes of using her eyes. (Id. at 38-39). In particular, Jury sees spots and lights in her eyes which require her to stop reading. (Id. at 38-39, 40-42). Jury and her husband both stated that the spots in her right eye cause Jury to cut her fingers when using knives. (Id. at 40). As a result of her vision problems,

Jury does not drive for more than ten minutes, nor does she drive at night or in snow.  (Id. at 35, 40).  Jury also gave up knitting and making coasters.  (Id. at 36, 42).

For many years, Jury was a sewing machine operator in a factory.  (Id. at 46). Jury later worked as a prep cook in a restaurant until February 2010 when new ownership laid off the entire staff.  (Id.)  Jury testified that, in January 2010, she decreased her hours on her physician's advice because the heat and fast pace caused her shortness of breath.  (Id. at 37).  At the time of the hearing, Jury was keeping house and running errands, such as grocery shopping, on a day-to-day basis.  (Id. at 36, 42-43).  Jury noted that she cooks in her home and washes the laundry.  (Id. at 43).  She does not use computers or the television often because the brightness of the screen affects her vision.  (Id. at 37).

On August 22, 2011, the ALJ issued a decision denying Jury's claim for disability insurance benefits.  (See id. at 9-25).  Jury appealed the ALJ's decision to the Appeals Counsel on September 13, 2011, (see id. at 7-8), and the Appeals Counsel denied the appeal on August 30, 2012.  (See id. at 1-6).

On October 4, 2012, Jury, through counsel, filed a complaint in the instant action to appeal the final administrative decision denying her application for social

security benefits pursuant to 42 U.S.C. §1383(c)(3).[6] (Doc. 1). On December 17,

2012, the Commissioner filed an answer (Doc. 7) to Jury's complaint and provided

the administrative record for the court's review. (Doc. 8). Upon further briefing by

the parties, the instant action is ripe for disposition. (See Docs. 11, 12, 13).

## II.    Standard of Review

In reviewing a social security appeal, the court may conduct a plenary review

of all legal issues decided by the Commissioner. See Poulos v. Comm'r of Soc. Sec.,

474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d

429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). The

court's review of findings of fact pursuant to 42 U.S.C. § 405(g), however, is limited

to determining whether the findings are supported by "substantial evidence."

42 U.S.C. § 405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008);

Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); Brown v. Bowen, 845 F.2d 1211, 1213

(3d Cir. 1988). Factual findings which are supported by substantial evidence must

---

[6] "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title." 42 U.S.C. §1383(c)(3). "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision . . . . Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business." Id. § 405(g). Under the Local Rules for the U.S. District Court for the Middle District of Pennsylvania, "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." L.R. 83.40.1.

be upheld.  42 U.S.C. § 405(g); <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 552 (3d Cir.

2005) (stating that courts may not weigh the evidence or substitute its own

conclusion for those of the fact-finder); <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 38 (3d

Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence,

we are bound by those findings, even if we would have decided the factual inquiry

differently."); <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981) ("Findings of fact by

the Secretary must be accepted as conclusive by a reviewing court if supported by

substantial evidence.").

Substantial evidence "does not mean a large or considerable amount of

evidence, but rather 'such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" <u>Pierce v. Underwood</u>, 487 U.S. 552, 564-65

(1988) (quoting <u>Consol. Edison Co. v. N.L.R.B.</u>, 305 U.S. 197, 229 (1938)); <u>Johnson</u>,

529 F.3d at 200; <u>Hartranft v. Apfel</u>, 181 F.3d 358, 360 (3d Cir. 1999).  The Third

Circuit has described substantial evidence as more than a mere scintilla, but

substantial evidence may be less than a preponderance of the evidence.  <u>Brown</u>, 845

F.2d at 1213.  In an adequately developed factual record, substantial evidence may

be "something less than the weight of the evidence, and the possibility of drawing

two inconsistent conclusions from the evidence does not prevent an administrative

agency's finding from being supported by substantial evidence." <u>Consolo v. Fed.

Mar. Comm'n</u>, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in

the record," <u>Cotter</u>, 642 F.2d at 706, and "must take into account whatever in the

6

record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340

U.S. 474, 488 (1971). "When a conflict in the evidence exists, the ALJ may choose

whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'"

Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (quoting Mason v. Shalala, 994

F.2d 1058, 1066 (3d Cir. 1993)). The ALJ must indicate which evidence was

accepted, which evidence was rejected, and the reasons for rejecting certain

evidence. Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000);

Cotter, 642 F.2d at 706-707. Therefore, the court must scrutinize the record as a

whole on appeal. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v.

Califano, 606 F.2d 403, 407 (3d Cir. 1979).

## III.   Sequential Evaluation Process

To receive disability benefits, the plaintiff must demonstrate an "inability to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A). An individual is incapable of engaging in

"substantial gainful activity" when "his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any

other kind of substantial gainful work which exists in the national economy." Id.

§ 423(d)(2)(A).

An ALJ utilizes a five-step sequential evaluation process in assessing disability insurance benefits claims. 20 C.F.R. § 404.1520(a).  This process requires the ALJ to consider, in sequence, whether a plaintiff (1) is engaging in "substantial gainful activity,"[7] (2) has an impairment, or combination of impairments, that is "severe,"[8] (3) has an impairment, or combination of impairments, that meets or equals the requirements of a "listed impairment,"[9] (4) has the "residual functional

---

[7] "Substantial gainful activity" is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit." 20 C.F.R. § 404.1510.  If the plaintiff is engaging in "substantial gainful activity," the plaintiff is not disabled and the court need not proceed further with the sequential evaluation. Id. § 404.1520(b).

[8] A "severe" impairment significantly limits a plaintiff's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c).  Basic physical work activities include the ability to walk, stand, sit, lift, carry, push, pull, reach, stoop, crouch, and handle. Id. § 404.1545(b).  An individual's basic mental or non-exertional activities include the ability to understand, carry out and remember simple instructions, and to respond appropriately to supervision, coworkers and work pressures in a work setting. Id. § 404.1545(c).  If the plaintiff does not have any severe impairment, or a combination of impairments which is severe, that has lasted or is expected to last for a continuous period of at least twelve (12) months, the plaintiff is not disabled and the sequential evaluation ends at this step. Id. §§ 404.1509, 404.1520(c).  Regardless of the ALJ's conclusion, all medically determinable impairments, whether severe or non-severe, are considered in the subsequent steps of the sequential evaluation process. Id. §§ 404.1523, 404.1545(a)(2).

[9] A "listed impairment" is one that appears on the Commissioner's Listing of Impairments, which is "a list of impairments presumed severe enough to preclude any gainful work." Sullivan v. Zebley, 493 U.S. 521, 525 (1990); see 20 C.F.R. pt. 404, subpt. P, app. 1.  If the plaintiff has an impairment, or combination of impairments, that meets or equals a listed impairment, the plaintiff is disabled. 20 C.F.R. § 404.1520(d).  Otherwise, the sequential evaluation proceeds to the next step. Id. § 404.1520(e).

capacity" to return to his or her past work,[10] and (5) if not, whether he or she can perform other work in the national economy.  Id. § 404.1520(a).  The burden of proof rests upon the plaintiff through the first four steps, and if the plaintiff is successful, then the burden of proof shifts to the Commissioner on the fifth and final step. Mason, 994 F.2d at 1064.

Prior to addressing step four, the ALJ must determine the plaintiff's residual functional capacity.  20 C.F.R. § 404.1520(e).  Residual functional capacity ("RFC") is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, meaning a full-time schedule such as eight hours a day, five days per week.  See SSR 96–8p, 61 Fed. Reg. 34475 (July 2, 1996).[11]  The ALJ's RFC assessment must include a discussion of the individual's abilities.  20 C.F.R. § 404.1545; SSR 96–8p; see Fargnoli, 247 F.3d at 40 (defining residual functional capacity as that which an individual is still able to do despite the limitations caused by his or her impairments).

---

[10] If the plaintiff has the residual functional capacity to do his or her past relevant work, the plaintiff is not disabled and the sequential evaluation ends.  Id. § 404.1520(f).

[11] Social Security Rulings ("SSR") constitute the Social Security Administration's interpretations of the Social Security Act and its own regulations. See Molina v. Astrue, 674 F.3d 1104, 1113 n. 5 (9th Cir. 2012); Lauer v. Apfel, 169 F.3d 489, 492 (7th Cir. 1999).  SSRs do not have the force of law; nevertheless, once published, they are binding on the Social Security Administration.  Heckler v. Edwards, 465 U.S. 870, 873 n. 3 (1984); Boone v. Barnhart, 353 F.3d 203, 210 n. 16 (3d Cir. 2003); 20 C.F.R. § 402.35(b)(1).

In the case *sub judice*, the ALJ applied the sequential evaluation process and, at step one, established that Jury has not engaged in substantial gainful activity since February 1, 2010.  (Doc. 8-2 at 14).  At step two, the ALJ found that Jury has the following severe impairments: asthma, vision problems, and depression.[12]  (Id.)  At step three, the ALJ held that Jury's impairments do not meet or equal a listed impairment.  (Id. at 15).  Specifically, the ALJ concluded that Jury does not satisfy listing 3.03 for asthma, which is evaluated under the criteria in listing 3.02(A), nor does the objective medical evidence indicate that Jury meets listings 3.02(B) or 3.02(C) for chronic pulmonary disorders.  (Id.)  The ALJ also determined that Jury's vision impairments do not satisfy listing 2.02 because her remaining vision after best correction was not equal to or less than 20/200, (id.), and that Jury's depression does not meet or equal the "paragraph B" and "paragraph C" criteria of listing 12.04.  (Id. at 16-17).  At step four, the ALJ concluded that Jury can no longer perform her prior relevant work.  (Id. at 20).  Nevertheless, the ALJ found that Jury retains the residual functional capacity to perform a limited range of light work because she is capable of occasional climbing, balancing, stooping, kneeling, crouching, and crawling, as well as occasional far acuity, peripheral acuity, depth

---

[12] The ALJ noted that Jury underwent a sleep study in April 2007 for obstructive sleep apnea.  (Doc. 8-2 at 15).  However, the medical evidence of record does not include information regarding Jury's further treatment since the alleged disability onset date.  (Id.)  Jury also did not testify regarding obstructive sleep apnea at the hearing.  (Id.)  The ALJ concluded that the obstructive sleep apnea does not have more than a minimal impact on Jury's ability to sustain work activity and is therefore a non-severe impairment.  (Id.)

perception.  (Id. at 17-19).  However, Jury must avoid extreme temperatures and pulmonary irritants, and she is limited to simple, repetitive tasks that involve only incidental reading and no significant writing or reading fine print.  (Id.)  Based on her residual functional capacity and the testimony of a vocational expert, at step five, the ALJ determined that Jury can perform light, unskilled work, such as housekeeping, greeter/information clerk, or school bus monitor, and that there are a significant number of such jobs in the local and national economies.  (Id. at 20-21).  As a result of the five-step sequential evaluation process, the ALJ concluded that Jury has not been disabled since February 1, 2010 under the Social Security Act.  (Id. at 21).

## IV.   **Discussion**

In the instant action, Jury requests that the court reverse or remand her claims to the ALJ for further proceedings on the following grounds.  First, the ALJ erred at step three in finding that Jury's respiratory impairment does not meet or equal any listed impairments.  (Doc. 11 at 14-17).  Second, substantial evidence does not support the ALJ's RFC assessment at step four because the ALJ improperly discounted the medical opinions of her treating physician.  (Id. at 7-10).  Third, the ALJ also did not consider Jury's credibility prior to the RFC assessment.  (Id. at 17-19).  Finally, at step five, the ALJ did not account for all of Jury's limitations in determining whether she could perform other work in the national economy.  (Id. at 10-14).  The court will address each argument *seriatim*.

### A.    Listed Impairments for Respiratory Disorders

At step three of the sequential evaluation process, the ALJ must determine whether a plaintiff's alleged impairment meets or equals any listed impairment on the Commissioner's Listings of Impairments.  20 C.F.R. § 404.1520(a)(4)(iii); see 20 C.F.R. pt. 404, subpt. P, app. 1.  The purpose of the Listings is to describe impairments "severe enough to prevent a person from doing any gainful activity, regardless of his or her age, education, or work experience."  20 C.F.R. § 404.1525(a); see also Sullivan v. Zebley, 493 U.S. 521, 532 (1990); Knepp, 204 F.3d at 85.  The Listings operate as a presumption of disability without further inquiry as to whether the plaintiff can actually perform his or her prior work or other available work.  Zebley, 493 U.S. at 532.  To satisfy a listed impairment, the plaintiff has the burden of presenting "medical findings equal in severity to *all* the criteria for the one most similar listed impairment."  Id. at 531; Williams v. Sullivan, 970 F.2d 1178, 1186 (3d Cir. 1992).  An impairment that meets only some of the criteria for a listed impairment, "no matter how severely, does not qualify."  Zebley, 493 U.S. at 530.

Jury argues that the ALJ erred by finding that Jury's respiratory impairment does not meet listing 3.02 for chronic pulmonary insufficiency or listing 3.03 for asthma.  (Doc. 11 at 14-17).  Listing 3.02 has paragraph "A", "B", and "C" criteria.  See 20 C.F.R. pt. 404, subpt. P, app. 1 § 3.02.  A respiratory impairment meets listing 3.02 when the requirements in any of paragraph "A", "B", or "C" are satisfied.  See id.  To satisfy the "paragraph A" or "paragraph B" criteria, a plaintiff must show that he or she suffers from chronic obstructive pulmonary disease with a forced

expiratory volume in one second (FEV1) equal to or less than 1.15, or chronic restrictive ventilatory disease with a forced vital capacity (FVC) equal to or less than 1.35, respectively. Id. §§ 3.02(A), 3.02(B). To establish chronic impairment of gas exchange, the "paragraph C" criteria requires, in relevant part, single breath diffusing capacity of the lungs for carbon dioxide (DLCO) less than 10.5 ml/min/mm Hg or less than 40 percent of the predicted normal value. Id. §§ 3.02(C). For listing 3.03, a plaintiff must demonstrate that his or her chronic asthmatic bronchitis meets or equals the criteria in listing 3.02A, or that he or she suffers attacks at least once every two months or six times a year despite prescribed treatment and requiring physician intervention. Id. § 3.03.

The ALJ held that Jury's respiratory impairment does not satisfy listing 3.03 because, on August 4, 2010, Jury underwent pulmonary function testing, and the results indicated that her FEV1 was well above the threshold in listing 3.02(A). (Doc. 8-2 at 15). The evidence of record also did not suggest that Jury suffers from prolonged asthma attacks requiring intensive treatment at least six times a year. (Id.) Finally, the ALJ found that "the spirometry data indicates that the claimant also does not meet the criteria of listing 3.02B or 3.02C." (Id.)

For these findings, the ALJ relied on his review of Jury's written submissions and testimony as well as objective medical evidence. (Id. at 18-19). The court notes that the administrative record in this case is 416 pages in length, primarily consisting of medical records. (See Doc. 8). The ALJ did an adequate job of reviewing Jury's medical history and vocational background in his decision.

13

Jury contends, however, that her respiratory impairment meets listing

3.02(C) because the pulmonary function testing from August 2010 indicated that

Jury's DLCO was only 9.0 ml/min/mm Hg, which is 38 percent of the predicted

normal value.[13]  (Doc. 11 at 14).  Jury argues that the ALJ made a conclusory finding

that her asthma did not meet listing 3.02(C) and failed to provide any further

explanation for such finding.  (Id. at 15).

It is well-established that an ALJ must set forth the reasons for his or her

administrative decision.  Burnett, 220 F.3d at 119; Cotter, 642 F.2d at 704-05

(holding that an ALJ's administrative decision must "be accompanied by a clear

and satisfactory explication of the basis on which it rests.").  When an ALJ makes a

bare conclusory statement that an impairment does not meet or equal a listed

---

[13] The Commissioner argues that Jury failed to establish that the pulmonary function testing complied with the specific methodology requirements in the Listings.  (Doc. 12 at 21-23).  The court may not, however, evaluate the ALJ's administrative decision on any grounds other than those the ALJ actually relied upon in making his decision.  In Securities & Exchange Commission v. Chenery Corp., 332 U.S. 194 (1947), the Supreme Court explained that:

> [A] reviewing court, in dealing with a determination or judgment
> which an administrative agency alone is authorized to make, must
> judge the propriety of such action solely by the grounds invoked by the
> agency.  If those grounds are inadequate or improper, the court is
> powerless to affirm the administrative action by substituting what it
> considers to be a more adequate or proper basis. To do so would
> propel the court into the domain which Congress has set aside
> exclusively for the administrative agency.

Id. at 196.  The Third Circuit has recognized the applicability of this rule in the context of social security disability cases.  Fargnoli, 247 F.3d at 44 n.7; see also Hux v. Astrue, No. 11-1306, 2012 WL 4498845, at *3 (W.D. Pa. Aug. 27, 2012).  Applying the Chenery doctrine, the court declines to consider the Commissioner's challenge to the DLCO testing methods.

impairment, the ALJ makes a "hopelessly inadequate step three ruling" that is "beyond meaningful judicial review." Burnett, 220 F.3d at 119.  Courts have since clarified that an ALJ is not required to use any particular language or adhere to a particular format in conducting his analysis.  See Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004).  Rather, an ALJ is merely required "to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." Id.  Thus, if the ALJ's decision as a whole demonstrates substantial evidence to support the ALJ's conclusion, then the ALJ adequately satisfies the Burnett standard.  Id. at 504-05.

In Jones, the plaintiff alleged that the ALJ erred in step three by failing to find that she was disabled under Listing 3.02(A) on the basis of her pulmonary function testing results.  Id. at 503.  The Third Circuit concluded, however, that "test results alone are insufficient to support a claim of disability."  Id. at 504 (stating that the introductory note to the listed respiratory impairments indicates that an FEV value should not be analyzed in isolation from other evidence); see also 20 C.F.R. pt. 404, subpt. P, app. 1 § 3.00(A) ("Because th[e] symptoms [attributable to respiratory disorders] are common to many other diseases, a thorough medical history, physical examination, and chest x-ray or other appropriate imaging techniques are required to establish chronic pulmonary disease.").  Instead, the panel determined that, when read as a whole, the ALJ's decision considered the appropriate factors in reaching his conclusion that the plaintiff did not meet the requirements for any listed impairment.  Jones, 364 F.3d at 505; see also Alexander

v. Astrue, No. 07-4913, 2008 WL 4091684, at *7-8 (E.D. Pa. Sept. 2, 2008) (affirming ALJ's decision because, even though he erroneously stated that plaintiff's FEV1 is not equal to or less than the values in listing 3.02(A), the ALJ nevertheless cited other substantial objective medical evidence).

Jury argues that Jones is distinguishable from the instant matter. In Jones, the ALJ expressly considered the pulmonary function studies, but focused on the evidence of clear lungs, lack of pulmonary complications, and no frequent hospitalization or emergency treatments. Jones, 364 F.3d at 505. In this case, however, the ALJ entirely failed to discuss the results of the pulmonary function testing in connection with the requirements for listing 3.02(C). See Manerchia v. Astrue, No. 09-447-GMS, 2011 WL 6014021, at *11-12 (D. Del. Dec. 1, 2011) (distinguishing Jones because the ALJ never addressed the weight of four objective MRI tests in finding that plaintiff did not meet or equal listing 1.04).

The court agrees. Although the ALJ considered objective medical evidence, including Jury's clear chest x-rays and recent treatment notes from her primary care physicians, (Doc. 8-2 at 18), the ALJ concluded that Jury does not meet listing 3.02(C) in a conclusory manner. (Id. at 15). The ALJ did not explain why he ignored or rejected the DLCO results from the pulmonary function testing. See Johnson v. Barnhart, 66 F. App'x 285, 288-89 (3d Cir. 2003) (holding that the ALJ could not simply ignore the supporting DLCO test results or summarily dismiss the results as inconsistent with other evidence); Burnett, 220 F.3d at 119-20 (remanding to the ALJ for conclusory determination that plaintiff did not meet or equal any

16

listed impairments without identifying such impairments or explaining his reasons).

Therefore, the court will vacate and remand the instant case for a discussion of the

DLCO results in assessing whether Jury's respiratory impairment meets or equals a

listed impairment at step three of the sequential evaluation process.

### B.    Weight of Treating Physician's Opinions

Jury next argues that the ALJ improperly discounted the medical opinions of

her treating physician in the RFC assessment.  (Doc. 11 at 7-10).  The Third Circuit

Court of Appeals has set forth the standard for evaluating the opinion of a treating

physician in <u>Morales v. Apfel</u>, 225 F.3d 310 (3d Cir. 2000).  The Third Circuit stated,

in relevant part, as follows:

> A cardinal principle guiding disability eligibility determinations is that the
> ALJ accord treating physicians' reports great weight, especially "when their
> opinions reflect expert judgment based on a continuing observation of the
> patient's condition over a prolonged period of time" . . . . [T]he ALJ must
> consider the medical findings that support a treating physician's opinion that
> the claimant is disabled.  In choosing to reject the treating physician's
> assessment, an ALJ may not make "speculative inferences from medical
> reports" and may reject "a treating physician's opinion outright only on the
> basis of contradictory medical evidence" and not due to his or her own
> credibility judgments, speculation or lay opinion.

<u>Id.</u> at 317-18 (internal citations omitted).

In the instant case, Darin M. Whitesel, O.D., has treated Jury for vision

problems since 2007 and extensively documented her visual impairments.  (Doc. 11

at 7).  As her treating optometrist, Dr. Whitesel completed a visual impairment

restrictions form on May 31, 2011, in which he reported that Jury has significant

limitations in her ability to read normal print, focus on close objects (near acuity)

and far objects (far acuity), focus in dim light, and perform tasks requiring depth perception.  (Doc. 8-2 at 19; <u>see</u> Doc. 8-8 at 406).  He also noted moderate limitations in Jury's ability to distinguish objects, be exposed to bright, normal, and outside light, and perform tasks requiring hand-eye coordination or spatial, form or clerical perception.  (Doc. 8-2 at 19; <u>see</u> Doc. 8-8 at 406).  On June 22, 2010, Mary Ellen Wyszomierski, M.D., a state agency medical consultant, opined that Jury only has limited near acuity based solely on her review of Jury's medical records.[14]  (Doc. 8-2 at 19; <u>see</u> Doc. 8-7 at 269).  The ALJ concluded that Jury has the residual functional capacity for occasional far acuity, occasional peripheral acuity, and occasional depth perception, and for tasks requiring incidental reading (excluding fine print) and no significant writing.  (Doc. 8-2 at 17).  In making this assessment, the ALJ attributed significant weight to the opinions of Dr. Wyszomierski, but discounted the opinions of Dr. Whitesel for "grossly overstat[ing] [Jury's] symptoms when compared to the remaining medical evidence of record."  (<u>Id.</u> at 19).

---

[14] Jury notes that Dr. Wyszomierski conducted her review nearly one year prior to Dr. Whitesel's functional assessment of Jury's visual impairments.  (Doc. 11 at 9-10).  Because she did not have the benefit of reviewing the opinion of Jury's treating specialist, Jury argues that Dr. Wyszomierski's review was based on an incomplete record and therefore her opinions are less persuasive than the opinions of Dr. Whitesel.  (<u>Id.</u>)  Moreover, Jury raises concerns about whether the ALJ properly considered Dr. Wyszomierski's qualifications in assessing her opinion.  (<u>Id.</u> at 10 n.6).  In light of the court's remand for further proceedings, the court need not address these arguments.  The court notes that such concerns may be appropriately reconsidered by the ALJ.

Jury contends that the ALJ improperly rejected Dr. Whitesel's opinions and substituted his own lay opinion based on a review of the medical records.[15]   (Doc. 11 at 9).  The court finds this argument persuasive for three reasons.  First, the ALJ purported to rely on Dr. Wyszomierski's report, but he did not accept Dr. Wyszomierski's finding that Jury has limited near acuity, and he failed to provide any reason for this aspect of his decision.  (See id.; Doc. 13 at 2-3).  The ALJ also appeared to reject Dr. Wyszomierski's opinion that Jury has no other visual impairments by virtue of the fact that he noted additional visual limitations in his RFC assessment.  The court notes that "[i]t is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."  Hardman v. Barnhart, 362 F.3d 676, 681 (10th Cir. 2004); see also Giardine v. Heckler, 639 F. Supp 5, 6-7 (M.D. Pa. 1985) (finding error in ALJ's selective use of psychiatrist's report).[16]

_____

[15] The Commissioner asserts that Jury's objection to the RFC assessment is meritless because the vocational expert testified that the other jobs that Jury can perform in the national economy do not require any near or far acuity or depth perception.  (Doc. 12 at 14).  This argument is inapposite.  The vocational expert expressly based her testimony on the stated residual functional capacity, which only noted the limitations of occasional far acuity and depth perception.  (See Doc. 8-2 at 47-49).  Obviously, the vocational expert's testimony would not apply to a residual functional capacity which properly included all of Jury's alleged visual limitations.

[16] For the same reasons, the court rejects the Commissioner's argument that substantial evidence exists simply because the ALJ partially agreed with Dr. Whitesel's opinion that Jury has visual limitations.  (Doc. 12 at 11-12).

Second, upon rejecting the medical opinions regarding Jury's visual impairments, the ALJ created his own set of visual impairments, which are not supported by either Dr. Whitesel or Dr. Wyszomierski.  In fact, the ALJ did not identify any contrary medical opinion by a treating, examining, or consulting physician which supports his RFC assessment.[17]  (See Doc. 11 at 9).  The court recognizes that a RFC assessment must be based on a consideration of all the evidence in the record, including the claimant's testimony and medical records. Burnett, 220 F.3d at 121.  However, the RFC determination ordinarily demands an assessment from a physician regarding the claimant's functional abilities.  See Doak v. Heckler, 790 F.2d 26, 29 (3d Cir. 1986) ("No physician suggested that the activity [plaintiff] could perform was consistent with the definition of light work set forth in the regulations, and therefore the ALJ's conclusion that he could is not supported by substantial evidence."); Kaumans v. Astrue, No. 3:11-CV-01404, 2012 WL 5864436, at *13 (M.D. Pa. Nov. 19, 2012) ("The administrative law judge cannot speculate as to a claimant's residual functional capacity but must have medical

---

[17] The Commissioner lists numerous other reasons for the ALJ's RFC assessment, including partial agreement with Dr. Whitesel's opinions, the amount and effect of treatment, and Jury's reported daily living activities.  (Doc. 12 at 12-13). The court finds that the Commissioner's explanations are not relevant because, under the Chenery doctrine, the court must evaluate an administrative decision based on evidence the ALJ actually considered in making his decision.  See supra note 13.  Because the Commissioner attempts to "re-weigh the evidence of record and substitute its judgment for that of the ALJ," (Doc. 12 at 14), the court rejects the Commissioner's additional evidence supporting the RFC assessment.  See Fargnoli, 247 F.3d at 42 n.6; Farr v. Colvin, No. 3:12-CV-1414, 2014 WL 47379 (M.D. Pa. Jan. 6, 2014).

evidence, and generally a medical opinion regarding the functional capabilities of the claimant, supporting his determination.").

Finally, contrary to Morales, the ALJ engaged in his own lay analysis of the medical records and included visual limitations unsupported by any medical opinion in his RFC assessment.  See Morales, 225 F.3d at 318 (noting that an ALJ may not disregard the medical opinion of a treating physician based solely on his or her own "amorphous impressions, gleaned from the record and from his evaluation of [the plaintiff]'s credibility" (quoting Kent v. Schweiker, 710 F.2d 110, 115 (3d Cir. 1983))); Schmidt v. Sullivan, 914 F.2d 117, 118 (7th Cir. 1990) ("[J]udges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor" because "lay intuitions about medical phenomena are often wrong.").  Accordingly, the court concludes that substantial evidence does not support the ALJ's RFC assessment.

## C.    Assessment of Jury's Credibility

Jury also argues that the ALJ did not adequately evaluate her credibility in the RFC assessment.  (Doc. 11 at 17).  Specifically, the ALJ improperly determined Jury's residual functional capacity before assessing her credibility and without considering her prior work history and her husband's witness statement.  (Id. at 17-19).

The ALJ must make a determination of disability based on all of the evidence of record, including subjective testimony about a plaintiff's symptoms.  Burnett, 220 F.3d at 122.  Accordingly, the ALJ must evaluate a plaintiff's credibility regarding

his or her symptoms, <u>Van Horn v. Schweiker</u>, 717 F.2d 871, 873 (3d Cir. 1983), and

the ALJ's findings on a plaintiff's credibility "are to be accorded great weight and

deference, particularly since an ALJ is charged with the duty of observing a

witness's demeanor and credibility." <u>Walters v. Comm'r of Soc. Sec.</u>, 127 F.3d 525,

531 (6th Cir. 1997); <u>see</u> also <u>Farr</u>, 2014 WL 47379, at *10; 20 C.F.R. § 404.1529(c)(3).

In assessing a plaintiff's credibility regarding his or her symptoms, the ALJ

should "determine the extent to which a [plaintiff] is accurately stating the degree

of pain and the extent to which he or she is disabled by it." <u>Hartranft</u>, 181 F.3d at

362 (citing 20 C.F.R. § 404.1529(c)); <u>Burns v. Barnhart</u>, 312 F.3d 113, 129 (3d Cir.

2002) (noting that the ALJ must give subjective complaints "serious consideration"

and "make specific findings of fact, including credibility, as to [plaintiff]'s residual

functional capacity") (citations omitted); SSR 96–7p, 61 Fed. Reg. 34483 (July 2,

1996) ("When evaluating the credibility of an individual's statements, the

adjudicator must consider the entire case record and give specific reasons for the

weight given to the individual's statements.").  In particular, an ALJ should

consider the following factors: (1) the plaintiff's daily activities; (2) the duration,

frequency and intensity of the plaintiff's symptoms; (3) precipitating and

aggravating factors; (4) the type, dosage, effectiveness, and side effects of any

medication taken to alleviate the symptoms; (5) treatment, other than medication

for relief of the symptoms; (6) any measures the plaintiff uses or has used to relieve

the symptoms; (7) the plaintiff's prior work record; and (8) the plaintiff's demeanor

during the hearing.  <u>See</u> 20 C.F.R. § 404.1529(c)(3).

"An ALJ must give great weight to a claimant's subjective testimony . . . when this testimony is supported by competent medical evidence." <u>Schaudeck</u>, 181 F.3d at 433; <u>Mason</u>, 994 F.2d at 1067-68.  However, the ALJ "has the right, as the fact finder, to reject partially, or even entirely, such subjective complaints if they are not fully credible." <u>Baerga v. Richardson</u>, 500 F.2d 309, 312 (3d Cir. 1974).  The ALJ may reject the plaintiff's statements regarding his or her symptoms "if [the ALJ] affirmatively addresses the claim in his decision, specifies the reason for rejecting it, and has support for his conclusion in the record." <u>Hirschfeld v. Apfel</u>, 159 F. Supp. 2d 802, 811 (E.D. Pa. 2001); <u>see also</u> <u>Fargnoli</u>, 247 F.3d at 43.

A review of the ALJ's decision in this case shows that the ALJ merely listed Jury's statements regarding her symptoms and summarily concluded that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Doc. 8-2 at 18).

In <u>Bjornson v. Astrue</u>, 671 F.3d 640 (7th Cir. 2012), the Seventh Circuit criticized the same "opaque boilerplate" language used in the ALJ's decision. <u>Id.</u> at 644-46 (citing <u>Parker v. Astrue</u>, 597 F.3d 920, 922 (7th Cir. 2010)).  The Seventh Circuit subsequently explained its reasoning:

We criticized this boilerplate in Bjornson v. Astrue, 671 F.3d 640, 644-46 (7th Cir. 2012), and our opinion has not changed since Bjornson was issued. Obvious problems include the fact that the ALJ's finding of residual functional capacity is not "above" in the opinion but is yet to come, and the fact that this statement puts the cart before the horse, in the sense that the determination of capacity must be based on the evidence, including the claimant's testimony, rather than forcing the testimony into a foregone conclusion. In Bjornson, this flaw required us to reverse and remand, but that is not always necessary. If the ALJ has otherwise explained his conclusion adequately, the inclusion of this language can be harmless.

Filus v. Astrue, 694 F.3d 863, 868 (7th Cir. 2012).

In the instant action, the ALJ failed to set forth any further explanation for his credibility finding. The ALJ also did not provide any reason for rejecting relevant factors such as Jury's prior work record and third-party witness statements.[18] See, e.g., Rieder v. Apfel, 115 F. Supp. 2d 496, 505 (M.D. Pa. 2000) ("When a claimant has worked for a long period of time, his testimony about his work capabilities should be accorded substantial credibility." (citing Dobrowolsky, 606 F.2d at 409)); Peak v. Astrue, No. 4:10-CV-00889, 2011 U.S. Dist. LEXIS 152837, at *32 (M.D. Pa. Jan. 24, 2011) (finding error when the ALJ acknowledged the plaintiff's spouse's statement, but did not articulate why his spouse's observations were not credible); O'Connor v. Astrue, No. 4:11-CV-01214, 2012 WL 3697279, at *7

---

[18] The Commissioner seeks to show that the ALJ considered the relevant factors for evaluating a plaintiff's credibility by personally analyzing Jury's symptoms and the objective medical evidence. (Doc. 12 at 24-27). However, it is the ALJ's responsibility to provide explicit reasons for his findings. Burnett, 220 F.3d at 121-22. Any subsequent analysis provided by the Commissioner cannot replace the analysis lacking in the ALJ's administrative decision. See Fargnoli, 247 F.3d at 42 n. 6; Farr, 2014 WL 47379, at *12 n.5. Therefore, the court will not consider the Commissioner's post hoc rationalization for the ALJ's credibility finding.

(M.D. Pa. Aug. 27, 2012) ("It is legal error for an administrative law judge to fail to consider third-party statements or testimony regarding the functional abilities of a claimant." (citing Burnett, 220 F.3d at 122)); cf. Stehley v. Astrue, No. 2:11-CV-1445, 2012 WL 2572052, at *5 (W.D. Pa. July 2, 2012) (finding no error when the ALJ stated eight reasons for the credibility determination of plaintiff's subjective complaints, including the ALJ's observations at the hearing, plaintiff's reported activities of daily living and relief from pain after physical therapy, and the objective medical record).

Moreover, upon a review of the record, the court notes that Jury's symptoms were generally consistent with the medical findings of her treating physicians. (See Docs. 8-7 & 8-8); see Mason, 994 F.2d at 1067 ("Where medical evidence does support a claimant's complaints of pain, the complaints should then be given 'great weight.'").  In light of the ALJ's error in evaluating the medical opinions, related findings regarding Jury's credibility are rejected; under the circumstances, they are not supported by substantial evidence.  See Farr, 2014 WL 47379, at *11-12.  The court will remand the instant case for proper consideration of Jury's credibility, including evidence of her prior work history and her husband's witness statement.

### D.    Hypothetical Questions to Vocational Expert

Lastly, Jury objects to the ALJ's conclusion at step five that she retains the residual functional capacity to perform jobs existing in the workforce.  Jury claims that the testimony provided by the vocational expert does not constitute substantial

evidence because the hypothetical questions[19] posed to the expert did not

adequately incorporate her mental limitations.  (Doc. 11 at 10-11).  The court agrees.

"[A] hypothetical question posed to a vocational expert must reflect *all* of a

claimant's impairments."  Burns, 312 F.3d at 123 (quoting Chrupcala v. Heckler, 829

F.2d 1269, 1276 (3d Cir. 1987)) (emphasis added); Podedworny v. Harris, 745 F.2d

210, 218 (3d Cir. 1984) ("While the ALJ may proffer a variety of assumptions to the

expert, the vocational expert's testimony . . . may only be considered . . . if the

question accurately portrays the claimant's individual physical and mental

impairments.").  Where the record contains medically undisputed evidence of

certain impairments not included in any hypothetical question, the vocational

expert's testimony cannot be the basis of substantial evidence supporting the ALJ's

disability decision.  Burns, 312 F.3d at 123.

At step three of the sequential evaluation process, the ALJ found that Jury

has moderate limitations in concentration, persistence, or pace due to her

depression.  (Doc. 8-2 at 16).  Despite finding such limitations, the ALJ only limited

Jury to simple, repetitive tasks in his hypothetical questions to the vocational

---

[19] "Testimony of vocational experts in disability determination proceedings typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert.  The ALJ will normally ask the expert whether, given certain assumptions about the claimant's physical capability, the claimant can perform certain types of jobs, and the extent to which such jobs exist in the national economy."  Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984).

expert.  (Id. at 17, 46).  Jury argues that the ALJ erred by failing to include similar

limitations for persistence or pace in the hypothetical questions.[20]  (Doc. 11 at 11).

The Third Circuit has previously addressed the issue of including

concentration, persistence, or pace limitations in hypothetical questions to a

vocational expert.  In Burns, the panel explained that a reference to simple tasks

does not "specifically convey" a plaintiff's intellectual limitations and that "greater

specificity" was required.  Burns, 312 F.3d at 122-23.  More specifically, in Ramirez

v. Barnhart, 372 F.3d 546 (3d Cir. 2004), the Third Circuit found that the limitation

to one- or two-step tasks does not adequately encompass a finding that a plaintiff

---

[20] The Commissioner argues that the ALJ need only consider credibly
established functional limitations and that the evidence of record in this case does
not support any limitations beyond simple, repetitive tasks.  (Doc. 12 at 15).  Here,
however, the ALJ clearly accepted Jury's evidence and made a finding of fact that
Jury suffers from moderate limitations in concentration, persistence, or pace.  (See
Doc. 8-2 at 16).  It is neither the Commissioner's nor the court's place to re-weigh
the evidence.  See Rutherford, 399 F.3d at 552 (stating that courts may not weigh
the evidence or substitute its own factual findings in the ALJ's decision).
Accordingly, the Commissioner's argument is misplaced.
    The Commissioner also cites to Hux v. Astrue, No. 11-1306, 2012 WL 4498845
(W.D. Pa. Aug. 27, 2012), for the proposition that the finding of moderate limitations
on a plaintiff's concentration, persistence, or pace have no bearing on the content of
a RFC assessment.  (Doc. 12 at 16 (citing Hux, 2012 WL 4498845, at *6)).  Hux is
distinguishable from the instant matter.  In Hux, the court simply stated that "[t]he
specificity required to make [] an [RFC] assessment is not compatible with an
analysis tailored to 'broad functional areas,'" and "a more detailed assessment" is
necessary to account for all physical and mental limitations impacting a plaintiff's
abilities in a work setting.  Hux, 2012 WL 4498845, at *6; see also Ramirez v.
Barnhart, 372 F.3d 546, 555 (3d Cir. 2004) (stating that a Psychiatric Review
Technique Form (PRTF) used in step three to evaluate mental impairments is "not
an RFC assessment," but "it does not follow that the findings on the PRTF play no
role in steps four and five [of the sequential evaluation process]").

often suffers from deficiencies in concentration, persistence, or pace.[21]  Id. at 554-55.

As an example, a limitation to simple or unskilled tasks does not take into account

that a plaintiff with deficiencies in pace may be able to perform such tasks, but not

over an extended period of time.  Id. at 554; see, e.g., Foley v. Barnhart, 432 F. Supp.

2d 465, 482 (M.D. Pa. 2005); Harris v. Astrue, No. 4:11-CV-00556, 2012 WL 1902596,

at *9 (M.D. Pa. May 25, 2012).

   Applying the *ratio decidendi* of Ramirez, the ALJ's failure to incorporate

Jury's moderate limitations in persistence or pace in the hypothetical questions to

the vocational expert was error.  The court also notes that there is no evidence in

the record from the vocational expert that moderate limitations in persistence or

---

   [21]  The Commissioner relies on a non-precedential opinion, McDonald v.
Astrue, 293 F. App'x 941 (3d Cir. 2008), to establish a distinction between
"moderate" deficiencies and "often" having deficiencies in concentration,
persistence, or pace. (Doc. 12 at 16).  In McDonald, the Third Circuit found that the
plaintiff had "moderate" deficiencies in concentration, persistence, or pace, and
noted in a footnote that Ramirez was distinguishable because the plaintiff in
Ramirez "often" suffered from deficiencies in concentration, persistence, or pace.
McDonald, 293 F. App'x at 946 n.10.  However, the panel did not address the recent
change in the functional five-point scale used to assess concentration, persistence,
or pace, which changed the term "often" to "moderate" at the third level of the five-
point scale.  See Strouse v. Astrue, No. 07-4514, 2010 WL 1047726, at *6 (E.D. Pa.
Mar. 19, 2010); see also Colon v. Barnhart, 424 F. Supp. 2d 805, 811 (E.D. Pa. 2006)
(explaining the changes to the functional five-point scale).  Several district courts
have thus concluded that "moderate" on the new scale and "often" on the old scale
are equivalent.  See Strouse, 2010 WL 1047726, at *6; Colon, 424 F. Supp. 2d at 811;
Dynko v. Barnhart, No. 03-CV-3222, 2004 WL 2612260, at *5 (E.D. Pa. Nov. 16, 2004)
(considering "often" and "moderate" impairments equally on a five-point
continuum).  Moreover, in McDonald, the court held that the lack of record
evidence for the plaintiff's alleged limitations was dispositive to his claim for social
security benefits, not the distinction between"often" suffering from deficiencies or
"moderate" deficiencies.  McDonald, 293 F. App'x at 946.  Therefore, the court will
apply Ramirez to the present case.

pace would not impact Jury's ability to maintain other employment.  (See Doc. 11 at

14); Harris, 2012 WL 1902596, at *10; cf. Hux, 2012 WL 4498845, at *6 (finding

substantial evidence when vocational expert added that a limitation precluding

"assembly line pace work" would not change her testimony).  Accordingly, the court

finds that the vocational expert's testimony does not constitute substantial evidence

to support the ALJ's conclusion that Jury can perform other jobs in the national

economy.  The court will remand the case to the ALJ for lack of substantial

evidence at the fifth and final step of the sequential disability evaluation process.

## V.    Conclusion

For the foregoing reasons, the court will grant Jury's appeal and remand the

case to the ALJ for further proceedings consistent with this memorandum.

An appropriate order will issue.


                              /S/ CHRISTOPHER C. CONNER
                              Christopher C. Conner, Chief Judge
                              United States District Court
                              Middle District of Pennsylvania


Dated:        March 14, 2014